IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

JOHNNIE WILLIAMS,
      Petitioner,

v.                          Case No.  3:10cv215/LC/CJK

KENNETH S. TUCKER,
      Respondent.
_____

## REPORT AND RECOMMENDATION

Before the Court is a petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 1) and supporting memorandum (doc. 2).  Respondent filed an answer (doc. 19), submitting relevant portions of the state court record (doc. 22).  Petitioner replied.  (Docs. 25, 31).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the Court show that petitioner is not entitled to federal habeas relief, and that the petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

Petitioner was charged in Escambia County Circuit Court Case Number 03-

5746, with Trafficking in Illegal Drugs (28 grams or more but less than 30 kilograms) (Count 1); Selling, Manufacturing, Delivering, or Possessing with Intent to Sell, Manufacture or Deliver, a Controlled Substance (Count 2); and Resisting an Officer Without Violence (Count 3). (Doc. 22, Ex. B, pp. 1-2).[1] A jury was selected on February 21, 2005. (*Id*., pp. 52-130). Petitioner's trial commenced on February 25, 2005; however, petitioner terminated the trial just before the State rested, informing the trial judge that he wanted to plead guilty as charged, "straight up" to the court (i.e., with no plea agreement), with the opportunity to provide substantial assistance to law enforcement. (Ex. C, pp. 90-107). The trial judge ensured petitioner discussed the plea with defense counsel, conducted a plea colloquy with petitioner, and accepted petitioner's plea after satisfying herself that the plea was entered knowingly and voluntarily. (*Id*., pp. 97-107). The trial judge deferred adjudication of guilt until sentencing, and delayed sentencing to allow petitioner the opportunity to provide substantial assistance to law enforcement. (*Id*., p. 107). On March 4, 2005, petitioner moved to withdraw his plea on the grounds that at the time he made his decision to plead guilty, he was either "stretched out" or "stressed out" and was therefore unable to make a reasoned decision relative to entering the plea. (Ex. B, p. 138). The court allowed petitioner's trial counsel to withdraw and appointed new counsel (Clinton Couch). (Ex. A, p. 6). A hearing was held on petitioner's motion to withdraw plea on April 6, 2005, at which petitioner was present and represented by Mr. Couch. (Ex. D, pp. 175-274). At the close of the hearing the trial court denied petitioner's motion to withdraw plea. (*Id*., pp. 265-70). On January 5, 2007, petitioner was adjudicated guilty of all charges and sentenced to a mandatory minimum sentence of 25 years

---

[1]Hereafter, all references to exhibits are to those provided at Doc. 22, unless otherwise noted.

imprisonment on Count 1, a concurrent 15-year term of imprisonment on Count 2, and a concurrent 60-day term of imprisonment on Count 3.  (Ex. C, pp. 276-96).  Judgment was rendered that day.  (Ex. B, pp. 150-58).

Petitioner's counsel filed a notice of appeal and statement of judicial acts to be reviewed, identifying the following acts:  (1) denial of defendant's motion to discharge court-appointed counsel, (2) acceptance of defendant's guilty plea, (3) denial of defendant's motion to withdraw plea and (4) denial of defendant's request for downward departure for substantial assistance.  (*Id*., pp. 162, 165).  Appellate counsel filed an *Anders*[2] brief discussing each item set forth in the Statement of Judicial Acts to be Reviewed, but asserting that counsel was unable in good faith to advance any legal argument that reversible error existed with regard to any of the judicial acts.  (Ex. E).  The Florida First District Court of Appeal ("First DCA") gave petitioner thirty days in which to file and serve a *pro se* initial brief.  (Ex. F).  Petitioner did not file a *pro se* brief.  (*See* Ex. G).  The First DCA per curiam affirmed petitioner's conviction and sentence without written opinion on July 29, 2008.  *Williams v. State*, 987 So.2d 1215 (Fla. 1st DCA 2008) (Table) (copy at Ex. H).

On January 21, 2009, petitioner filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.  (Ex. I, pp. 1-53).  The Rule 3.850 court summarily denied relief.  (Id., pp. 45-169).  The First DCA per curiam affirmed without written opinion.  *Williams v. State*, 23 So.3d 114 (Fla. 1st DCA 2009) (Table) (copy at Ex. K).  The mandate issued December 21, 2009.  (Ex. N).

Petitioner filed his present federal habeas petition on June 14, 2010.  (Doc. 1, p. 1).  The petition presents three claims:  (1) that petitioner's plea was involuntary

---

[2]*Anders v. State of Cal*., 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

because it was the coerced by the trial judge's "threat" that if petitioner did not plead guilty, went to trial and was convicted, the court would impose a 45-year sentence, (2) that petitioner's plea was involuntary because defense counsel labored under a conflict of interest and misadvised petitioner that he could withdraw the plea and (3) that the trial court erred in denying petitioner's motion to withdraw plea.  (Docs. 1, 2).  Respondent asserts that petitioner's involuntary plea claims (Grounds One and Two) are procedurally defaulted, and that Ground Three presents purely an issue of state law.  (Doc. 19).  Respondent argues in the alternative that all of petitioner's claim are without merit.

## LEGAL STANDARDS

### Exhaustion and Procedural Default

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1),[3] thereby giving the state the "'opportunity to pass upon and correct'

---

[3]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–

    (A)  the applicant has exhausted the remedies available in the courts of the State; or

    (B) (i)  there is an absence of available State corrective process; or

     (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78. A claim that was not presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, i.e., procedurally barred from federal review. *O'Sullivan*, 526 U.S. at 839-40, 848, 119 S. Ct. 1728; *Bailey v. Nagle*, 172 F.3d 1299, 1302-03 (11th Cir. 1999); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts). A claim is also considered procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default. *Coleman v. Thompson*, 501 U.S. 722, 729-30, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991) (holding that the independent and adequate state ground doctrine "applies to bar federal habeas when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement."); *Caniff v. Moore*, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); *accord Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L.Ed.2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to

exhaust state remedies would be futile under the state's procedural default doctrine. *Bailey*, 172 F.3d at 1303.  In the second instance, the federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See Harris v. Reed*, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower*, 7 F.3d at 210.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim."  *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*quoting Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him."  *Schlup*, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

*Id*.

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody

pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4]  The appropriate test was described by Justice O'Connor as follows:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle

---

[4]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003). The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue. *Thaler v. Haynes*, — U.S. —, 130 S. Ct. 1171, 1173, 175 L. Ed. 2d 1003 (2010); *Bowles v. Sec'y for Dep't of Corr.*, 608 F.3d 1313, 1315 (11th Cir. 2010).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law. The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent. Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."). If the state court decision <u>is</u> contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim. *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the state court decision is not contrary to clearly established federal law, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court.  *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam); *cf. Bell v. Cone*, 535 U.S. 685, 697 n. 4, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the state court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context."  *Putman v. Head*, 268 F.3d 1223, 1241 (11th Cir. 2001). A state court, however, may "decline to apply a specific legal rule that has not been squarely established by [the Supreme Court]" without running afoul of the "unreasonable application" clause.  *Knowles v. Mirzayance*, 556 U.S. 111, 122, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009).

When faced with a state appellate court's summary affirmance of a trial court's decision, the "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See Gill v. Mecusker*,  633 F.3d 1272, 1287 (11th Cir. 2011) (*citing Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786, 178 L. Ed. 2d 624 (2011)).  The federal court  must determine what arguments or theories supported or could have supported the state court's decision, and then ask

whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior Supreme Court decision.  *See Richter*, 131 S. Ct. at 786; *see also Gill*, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).  In sum, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Richter*, 131 S. Ct. at 786-87.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d)(2).   As with the "unreasonable application" clause, the federal court applies an objective test.  *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding.").   The "unreasonable determination of the facts" standard is implicated only to the extent the validity of the state court's ultimate conclusion is premised on unreasonable fact finding.  *See Gill*, 633 F.3d at 1292.

When performing review under § 2254(d), the federal court presumes that all

factual determinations made by the state court are correct.  28 U.S.C. § 2254(e)(1).
The petitioner bears "the burden of rebutting the presumption of correctness by clear
and convincing evidence."  *Id.*; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that
a federal court can disagree with a state court's factual finding and, when guided by
AEDPA, "conclude the decision was unreasonable or that the factual premise was
incorrect by clear and convincing evidence").  Neither the Supreme Court nor the
Eleventh Circuit has interpreted how § 2254(d)(2) and §2254(e)(1) interact in the
context of fact-based challenges to state court adjudications.  *Cave v. Sec'y for Dep't
of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently
declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate
court's summary affirmance, where it found that the validity of the state court
decision was not premised on the trial court's unreasonable fact finding, and that the
petitioner failed to demonstrate "by clear and convincing evidence that the record
reflect[ed] an insufficient factual basis for affirming the state court's decision."  *Gill*,
633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and
§ 2254(d), does the court take the final step of conducting an independent review of
the merits of the petitioner's claims.  *See Panetti*, 551 U.S. 930, 954, 127 S. Ct. 2842.
Even then, the writ will not issue unless the petitioner shows that he is in custody "in
violation of the Constitution or laws and treaties of the United States."  28 U.S.C.
§ 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."
*Richter*, 131 S. Ct. at 786.

## DISCUSSION

| Ground One | "Whether The Defendant's Plea Was Involuntarily [sic] Where |
|---|---|
| | Trial Court Informed Defendant It Was In His Best Interest To |

<u>Take Plea Offer From The State Because If Defendant Costs [sic]
At Trial, The Court Was Going To Give Defendant 45 Years In
Prison, And The Pronouncement Of The Court Resulted In A
Manifest Injustice In The Instant Case?"</u>  (Doc. 1, p. 4, Doc. 2, p.
1).

Petitioner challenges his guilty plea on the grounds that it was coerced by
"threats" from the trial judge that she would impose a 45-year sentence if petitioner
proceeded with the trial.  Petitioner alleges in support of this claim that on three
occasions, off the record and outside the presence of the jury (prior to commencement
of the trial, during a break in the trial and after a lunch recess), the trial judge
"informed [petitioner] that it was in his best interest to take the State's plea offer,
because if he lost at trial the Judge was going to give him 45 years in prison." (Doc.
2, pp. 1-2).  Petitioner states that he "turned down the suggestion of the Court" on the
first two occasions, but decided to plead guilty "immediately following" the judge's
third remark.  (*Id*., p. 2).  Petitioner characterizes the trial judge's statements as
"threats" and argues that these "threats" were "instrumental" in his decision to plead
guilty.  (*Id*.).  Petitioner asserts that he exhausted this claim by presenting it to the
state courts in his motion to withdraw plea proceeding.  (*Id*.).  Respondent asserts a
procedural default defense, arguing that although petitioner fairly presented this claim
to the trial court in his motion to withdraw plea and testified to various reasons why
his plea was involuntary, petitioner failed adequately to raise the claim during his
direct appeal, because appellate counsel filed an *Anders* brief and petitioner declined
to file a *pro se* brief. (Doc. 19, pp. 5-6).  Respondent further argues that petitioner's
attempt to obtain review of his involuntary plea claim on collateral review does not
constitute proper exhaustion, because the Rule 3.850 court deemed the claim
procedurally barred.  (*Id*., pp. 5-8, 13-14).

Respondent does not cite to any authority to support his assertion that petitioner's "flagging" his involuntary plea claims in an *Anders* brief on direct appeal does not constitute proper exhaustion.  (Doc. 19, p. 5) (arguing that petitioner's involuntary plea claims "were not presented to the appellate court as claims of error because counsel filed an *Anders* brief indicating there were no valid appeal issues"). Courts in this Circuit have concluded that raising an issue in an *Anders* brief on direct appeal <u>is</u> sufficient to satisfy § 2254(b)'s exhaustion requirement. *Jenkins v. Bullard*, 210 F. App'x 895, 898 (11th Cir. 2006) (concluding that habeas petitioner "completed the exhaustion of his state court remedies" by counsel's filing an *Anders* brief on direct appeal flagging petitioner's trial level claims); *McCoy v. Newsome*, 626 F. Supp. 374, 376 (M.D. Ga. 1986) (finding that claims raised on direct appeal in an *Anders* brief were exhausted as required by § 2254(b)); *Joiner v. McDonough*, No. 1:07cv181/MP/AK, 2009 WL 3152066, at *3 (N.D. Fla. Sept. 25, 2009) (finding that counsel's filing of an *Anders* brief on appeal constituted proper exhaustion, even though petitioner declined to file a *pro se* brief); *Vil v. Sec'y, Dep't of Corr.*, No. 6:06cv1126, 2008 WL 1733397, at *6 (M.D. Fla. Apr. 14, 2008) (finding that petitioner satisfied the exhaustion requirement by appellate counsel's raising the issue in an *Anders* brief on direct appeal).

In *Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed .2d 493 (1967), the United States Supreme Court held that when appointed counsel moves to withdraw on the ground that the appeal is wholly frivolous, the motion to withdraw should be accompanied by a "brief referring to anything in the record that might arguably support the appeal."  *Id*. at 744.  "[T]he court . . . then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous."

*Id*. Under Florida law, this requires the appellate court to "examine the record to the extent necessary to discover any error apparent on the face of the record." *State v. Causey*, 503 So. 2d 321, 322 (Fla. 1987). If the court concludes that there are no issues of arguable merit, it may grant counsel's motion to withdraw and either dismiss the appeal or affirm the judgment. *Anders*, 386 U.S. at 744, 87 S. Ct. at 1400; *Causey*, 503 So. 2d at 323.

Here, petitioner's appellate counsel noted in his *Anders* brief that there were several possible issues that might be raised, including the trial court's denial of petitioner's motion to withdraw plea. (Ex. E). The First DCA granted petitioner thirty days in which to file a *pro se* brief, advising petitioner that failure to file a brief "will result in this case being presented to the court without benefit of a *pro se* brief." (Ex. F). The First DCA further advised: "If the panel of judges which considers the merits of this appeal finds that the record or briefs support any arguable claims, additional briefing will be ordered in accordance with In re Anders Brief, 581 So. 2d 149 (Fla. 1991). (Ex. F). After considering the merits of petitioner's appeal, the First DCA affirmed petitioner's judgment. The First DCA's affirmance "reflects a decision by it that the issues flagged by [petitioner's] counsel in h[is] *Anders* brief were meritless, and that there was no error of any kind in the record." *Jenkins*, 210 F. App'x at 898. Petitioner properly exhausted the involuntary plea claim raised in Ground One. *See Duncan*, 513 U.S. at 365.

A.      Clearly Established Federal Law

"A guilty plea is an admission of criminal conduct as well as the waiver of the right to trial." *Finch v. Vaughn*, 67 F.3d 909, 914 (11th Cir. 1995) (*citing Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469, 25 L. Ed. 2d 747 (1970)).

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady* at 748.  The standard for determining the validity of a guilty plea is "whether the plea represents a voluntary intelligent choice among the alternative courses open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969).  Voluntariness implicates "[i]gnorance, incomprehension," and "inducements" as well as "coercion, terror" and "threats." *Boykin*, 395 U.S. at 242-43, 89 S.Ct. at 1712.

  B.  Federal Review of State Court Decision

  Petitioner challenged the voluntariness of his plea in his motion to withdraw plea proceeding.  Petitioner testified at the motion hearing that he decided to enter a plea mid-trial because he felt his "hands w[ere] tied" in that trial counsel Mr. Whittaker was not effectively defending him and "the Judge said she was going to give me 45 years." (Ex. D, pp. 192-93, 204).  The motion hearing transcript reveals that one of petitioner's primary issues with trial counsel concerned four potential witnesses:  Cindy McCree, Fred Taylor, Jr., Steven Stokes and Tucker Lawson.  (*Id*., pp. 190, 223).  Ms. McCree was petitioner's co-defendant who participated in the drug transaction (a controlled buy by Deputy Powell).  Mr. Taylor was present at the scene of the drug transaction, and was arrested on a separate drug charge.  (*Id*., pp. 215-16).  Both McCree and Taylor were deposed and implicated petitioner as being involved in the drug transaction (*id*., pp. 216, 219); however, their deposition testimony revealed inconsistencies (as to certain details of how the drug transaction was executed) between their versions of the drug deal and the arresting officer's

(Deputy Powell's) version. (*Id.*, pp. 190-91, 202, 216,222-23). For example, Deputy Powell testified that Ms. McCree got out of the car, walked over to petitioner, petitioner handed her the drugs, and McCree returned to the car. (Ex. C, pp. 33-34; *see also* Ex. D, p. 190-91). Ms. McCree's deposition testimony was that she did not get out of the car – petitioner came to the car and handed her the drugs. (Ex. D, pp. 190, 203, 214-15). Petitioner had urged defense counsel to call McCree and Taylor as defense witnesses, but defense counsel felt their testimony would do more harm than good, because despite the discrepancies in the peripheral details of how the drug deal went down, their testimony was consistent with regard to petitioner's guilt, petitioner's involvement in the drug transaction, and more significant details of the drug transaction. (Ex. D, p. 228, 230-31, 234). Defense counsel advised petitioner that the better strategy was to see if the State called McCree and Taylor as witnesses and then use their deposition testimony for impeachment. (*Id*, p. 230). Defense counsel advised petitioner that if the State did not call McCRee and Taylor as witnesses, the defense could not call them for the sole purpose of impeaching their credibility with their deposition testimony. (*Id.*, p. 229-30). Petitioner believed that defense counsel's performance was deficient for failing to find some way to bring to the jury's attention the inconsistencies between the arresting officer's version of the drug transaction and McCree's and Taylor's versions.

Petitioner also urged defense counsel to call Mr. Stokes and Mr. Lawson to testify that while inmates of the Escambia County Jail, they were present with Ms. McCree and petitioner in a jail transport van when they overheard Ms. McCree tell petitioner that law enforcement "coerced [her] into taking the [plea] deal and that she had to lie because that was part of her plea agreement, that [petitioner] gave her those

pills." (Ex. D, pp. 207-08; *see also* Doc. 2, pp. 8-9). After the defense listed Stokes and Lawson as defense witnesses, prosecutors met with Ms. McCree to discuss her alleged statement. Ms. McCree clarified that she did not tell petitioner she had been forced to lie about his involvement – she told petitioner she felt coerced to cooperate and resolve her case on a plea agreement because she was facing a severe sentence and was not receiving good representation from her defense attorney. (Ex. D, p. 224). Defense counsel testified at the motion to withdraw plea hearing, that Stokes' and Tucker's testimony was "not of any particular use" because of admissibility problems, because counsel "anticipat[ed] the ease with which the prosecutor would be able to deal with [the testimony], and because it was something "you'd grasp at [only] if you were going down." (Ex. D, p. 242).

Defense counsel testified at the motion to withdraw plea hearing that once it became clear that the State was not calling Ms. McCree or Mr. Taylor, and that the defense would not have the opportunity to bring out their conflicting versions of the drug transaction through cross-examination with their deposition testimony, petitioner decided to plead straight up because he had a weak defense and no exonerating witnesses, and a straight-up plea would at least provide him the opportunity to reduce his sentence by providing substantial assistance to law enforcement. (*Id.*, pp. 255-56).

The trial court considered petitioner's sworn statements at the plea colloquy as well as the evidence adduced at the motion to withdraw plea hearing, and denied relief after concluding that petitioner's plea was knowing and voluntary. (*Id.*, pp. 265-270). The trial court explained:

> Some of the things that I'm going to state are the Court's observations. I had, I believe, two *Nelson* hearing, extensive *Nelson*

hearings, and on both of those occasions I found that Mr. Whittaker was not ineffective assistance of counsel.

The Court drew from those hearings and the testimony that was presented, that Mr. Williams had a tough case, and that Mr. Whittaker was telling Mr. Williams the realities of that tough case, and Mr. Williams didn't want to hear that. And that was the vast majority of the frustrations that occurred.

As a matter of fact, even at some of those hearings and during trial, quite frankly, I think that Mr. Whittaker tread very close to crossing the line trying to accommodate Mr. Williams. There were a number of times that he put forward various pieces of evidence that he wanted in or arguments that he made, quite frankly, that I don't think he should have made as a defense attorney that's bound by the rules of court. But it was very clear that these were arguments that were dear and near to Mr. Williams' heart and Mr. Whittaker was trying to get them before the Court. And as he testified today, the Court overruled the objections that were made to those pieces of evidence and to those arguments.

So, I'm not sure if it's a matter of anything other than Mr. Williams does not like the predicaments that he has found himself in and did not like the realities of his case. I know the deal that was offered to him at first was 15 years state prison with the ability to go below the 15 if he provided substantial assistance. I think just hearing that there was a minimum mandatory of 15 years out there was terrifying to Mr. Williams.

At any rate, I'm going to make another comment about the attorney situation. I will tell you I have specific recollection that it was Mr. Williams who conceded that he was satisfied with the services of his attorney. And the reason that I have independent recollection of that is for the various *Nelson* hearings that we had previously had. I posed the question, as I did in the colloquy, just for the very reason today. I knew that there had been previous times that Mr. Williams was not happy with

Mr. Whittaker, and so I, specifically, posed the question:  Are you satisfied with the services that he has provided today in this trial?  Because we had already handled all the previous matters, and he didn't say "whatever."  It wasn't Mr. Whittaker that answered.  It was Mr. Williams that answered.  And he did state that he was satisfied with the services for that day.

I have heard all the varying reasons, and, quite honestly, he's thrown a number of them at me.  I wrote a bunch of them here.  During trial, he was pretty adamant that the only reason that he wanted to plea was because of the witnesses.  But, again, there had been a number of conflicting statements today, and the weight of the credibility goes with Mr. Whittaker.

Mr. Whittaker says  [summarizing Mr. Whittaker's testimony] I told him I couldn't in good conscious [sic] say that we should call these people.  Because even though that there were some discrepancies in the testimony, the common thread was guilt.  He then went on to say, if he had pushed the issue, I guess we could have called them.  But we weren't able to do that because when he found out that the State wasn't going to call them, he wanted to plea.

When I go back to the letter he [petitioner] wrote me, apparently, there was great discussion about the witnesses.  Because Mr. Williams is giving me conflicting things in here.  First of all, he says that Mr. Whittaker told him that they really couldn't call them because the statements were different.  That would be consistent with what Mr. Whittaker said.

Then, it goes on to say that they discussed the fact that they couldn't use depositions.  Well, you can't use depositions unless you're going to impeach, and you can't call your witnesses if you're solely going to impeach them.  So they must have discussed the thing about they couldn't use the depositions to impeach.  In addition, they talked about hostile witnesses in here.  It was gone over, I think, with Mr. Williams' own admissions in the letter to me, with very great detail.

The next day, I get a number of other things, I get the fact that he had a headache, that he has – was temporarily insane.  That he thought that the prosecutor was given information by Mr. Whittaker.  Again, with the credibility today, it goes, again, with Mr. Casey [one of the prosecutors] and with Mr. Whittaker.

Finally, I think it just comes down to the end, as all of his codefendants in this case – I can't speak for Mr. Lewis yet, because we haven't gotten there – but it's the same situation that I have right now with Ms. Britt.  I don't think that these folks can fathom that the legislature has passed a statute with such heavy-handed minimum mandatories.  That's what they don't understand and that's what they don't like.

But I do believe at the time that he entered his plea, he freely and voluntarily entered it.  I think, at that point in time, as we've discussed in the colloquy, that, yeah, he was going to attempt substantial assistance with Mr. Allday [a law enforcement officer], and for whatever reason, he changed his mind.

And then here he eludes that that reason is because he's afraid that if anybody ever found out that he performed substantial assistance, he would be killed.  It wasn't until today that we come in and he says that the whole reason he pled was to stop the trial.  Because he knew that if he pointed fingers at Mr. Whittaker, that I would have to appoint a new counsel; and, therefore, he would, basically, accomplish in the withdrawal of the plea what he couldn't accomplish in his *Nelson* hearing.

I don't buy that.  First of all, I was very specific in asking him in the colloqu[y], what is the deal?  Why, when you've been offered this plea so many times, are you now doing it?  That was never discussed. It was never mentioned.  And, quite frankly, I don't give Mr. Williams that level of sophistication.  Quite frankly, not many attorneys know that that is the process, the way it happens.  I'm not even sure that many

judges know that that's the way that it happens.

At any rate, I don't give him that level of sophistication for knowing that he would get another attorney to perhaps be able to go back to trial with.

At any rate, I think I've enunciated my decisions, accordingly. Based on everything that has been submitted in the form of argument, the issues that have been raised, the evidence that I have heard,  just do not find legally sufficient reasons to withdraw the plea.  Therefore, the plea stands.

(Ex. D, pp. 265-70).

The trial transcript provides the following record of the circumstances of petitioner's plea and the plea colloquy:

THE COURT:  All right.  I do want to put this on the record.  I was approached at the bench by Mr. Giraud [the prosecutor], on behalf of Mr. Williams by Mr. Whittaker [defense counsel], and the two counsel and I discussed the fact that because of Mr. Giraud's decision not to call two witnesses, to the stand, that the defendant is concerned as to the outcome of the trial, and is willing to take the plea that was offered previously in this case.  That plea involved substantial assistance.

I directed Mr. Giraud to call the officer involved [Mr. Allday] and, Mr. Giraud, the outcome of that conversation was?

MR. GIRAUD:  Judge, we came to an agreement that at this point in time, he's [referring to petitioner] gone pretty far and that his ability to help could be hindered.  So the deal was that he could just plea straight up for the sentence, and if he does what he says he can do, then we'll work him down from where he's at.  But until he actually provides, he is looking at the same.

(Ex. C, pp. 91-92).  Petitioner interjected that he believed he had already provided substantial assistance by giving Mr. Allday information prior to trial.  Defense

counsel interjected, "I understand.  Mr. Williams, that's the reason why I advised you

to take the deal <u>before</u> you spoke with Mr. Allday."  (*Id*., p. 92) (emphasis added).

The following exchange followed:

> THE COURT:  All right.  At this point in time, is your client even interested in the deal?  It makes no difference to me, but you have about one minute to decide, because I've got a jury that has been sitting back there for an hour plus, hour and a half.

> (Off-the-record discussion between Mr. Whittaker and the defendant.)

> THE COURT:  Mr. Whittaker, what is your client doing?

> MR. GIRAUD:  Judge, the State's ready to proceed.

> MR. WHITTAKER:  He says he'll take the deal, your Honor.

> THE COURT:  All right.  Do you understand, Mr. Williams, that what Mr. Allday said was that anything that you have previously provided him will not be considered substantial assistance in this case, do you understand that?

> THE DEFENDANT:  So I can't tell him about none of that I already told him, but I can tell him that, he still going – because he ain't acted on all of that, plus he – how do I know he even acted on all of that? Plus I give him that, plus about 30 more on top of 30 or 40 more people.

> MR. WHITTAKER:  That would be the issue, sir.

> THE COURT:  That would be substantial assistance, anything in the future.  Anything that you have provided thus far is not considered substantial assistance, according to Detective Allday.

> MR. WHITTAKER:  Is that the message that you got?  Is that the message that you got from him?

MR. GIRAUD:  The message I got from him is that – and I went from what you said, that he can do more.  If he does more, then we will vouch for him during sentencing.  If he wants to go forward with the trial, then there is the jury and I'm ready to go.

THE COURT:  Let me tell you, I'm about 30 seconds away from saying we're going forward because I think this sets a horrible precedence [sic] for me to allow a trial to begin and then accepting a plea.

MR. WHITTAKER:  Okay.  He still wants to take the deal, Your Honor.

MR. GIRAUD:  Then it's basically a straight-up plea to the Court, Your Honor.

THE COURT:  Okay.  Are you reducing the charge down to the 15?

MR. GIRAUD:  No, ma'am, straight-up deal to the Court, and then –

THE COURT:  All right.  Well, then, let me go ahead and make him – because I think he thinks he is getting the same deal with the difference of the substantial assistance.  Let me back up.

MR. WHITTAKER:  I've explained to him that that's not the deal.  That's not 15.

THE COURT:  All right.  Okay.  Let me get everything correct, and let me put everything on the record correct.  This is a first degree felony, Mr. Williams.

Do you have a scoresheet there?  Do you have the other plea agreement?

MR. GIRAUD:  No, that's what I'm looking for.  I'm looking for a plea agreement that you can read.  I do have a scoresheet in here somewhere.

THE DEFENDANT:  That's all right.  Let's go to trial, man.  I can't do it.  Let's go to trial.

THE COURT:  Mr. Williams, we don't make rash decisions like this in the courtroom.

THE DEFENDANT:  I got to go to trial.  I got to go to trial.  I just have to take my chances.  I'm going to get it anyway.

THE COURT:  Mr. Williams, we don't make rash decisions.

THE DEFENDANT:  Excuse me.

THE COURT:  I'm going to give you an explanation, and then after you confer with your attorney one more time, I'll be more than happy to go to trial if that's what you wish to do.

All right.  This is a current scoresheet?

MR. GIRAUD:  I believe so, Judge.  That was the one that was in the file.

THE COURT:  All right.  Mr. Williams, pursuant to the scoresheet that I'm holding, it reflects 117 points, which would mean that this is a minimum mandatory of 15, is it not?

MR. GIRAUD:  It's 25.

THE COURT:  Oh, 25, I'm sorry.  It's a minimum mandatory of 25 years' state prison, a maximum of 45 years' state prison.

What the deal is being offered to you is it stays exactly like that, that you've got a maximum of 25 years' state prison, a minimum of 25 years' state prison unless you provide further substantial assistance, and then even then, nothing is guaranteed, but they will argue it to me.  And if I believe that you have provided substantial assistance, then I can go

below the 25 years.

MR. WHITTAKER:  Or below the 15 years.

THE COURT:  Or below the 15 years.  I mean, below means below.

MR. WHITTAKER:  Anything below.

THE COURT:  But understand that I can also go up to 45 years if I choose to.  Have I stated that correctly, Mr. Giraud?

MR. GIRAUD:  Yes, Your Honor.

THE COURT:  It is a straight-up plea to the Court, which means that there are no guarantees.  It is strictly after hearing all of the evidence at sentencing, all the arguments at sentencing, that I would make a decision to what I believe is the best sentence in this case.

     Now, with that being said, do me a favor, please raise your right hand.

     (Defendant sworn.)

THE COURT:  All right.  Have you had any sort of medicine, alcohol, or any other substances in the last 24 hours which would make it so that you don't understand what we're doing here?

THE DEFENDANT:  No, ma'am.

THE COURT:  Have you ever ben declared incompetent to proceed in any matter?

THE DEFENDANT:  Not that I'm aware of.

THE COURT:  All right.  You've just heard everything that I have said. Please take a minute to talk it over with your counsel, and I do mean

just a minute.

(Off-the-record discussion between Mr. Whittaker and the defendant.)

MR. WHITTAKER:  He'll take the plea, Your Honor.

(Ex. C, pp. 92-98).  The trial judge asked the prosecutor to provide Mr. Whittaker with a sample plea agreement so that Mr. Whittaker could explain to petitioner the rights he was waiving by entering a plea.  (*Id*., p. 98).  Petitioner acknowledged that counsel had gone over the waiver of rights with him.  (*Id*.).  The following occurred:

THE COURT [addressing petitioner]:  I'm going to ask you those very questions.  When it comes time to you deciding to take a plea and going over the waiver of rights form, I want you to take your time because you need to be advised and informed.

MR. WHITTAKER:  I believe that he does understand the applicable parts of this plea offer [form], Your Honor.

. . . .

THE COURT:  All right.  The guidelines sheet is 117 points.  It is being accepted by the Court over no objection by counsel.

All right.  Mr. Williams, you have been previously sworn.  All right.  In Case No. 03-5746, Count 1, trafficking in illegal drugs, hydrocodone, 28 grams or more, but less than 30 kilograms, 30 years' state prison, $500,000 fine, 25 years minimum mandatory.

Count 2, possession of a controlled substance with intent to sell or deliver, 15 years state prison, $10,000 fine.

. . . .

Count 3, resisting officer without violence is that a five year,

5,000, Mr. Giraud?

MR. GIRAUD:  No, Your Honor, one year.

THE COURT:  One year, 1000?

MR. GIRAUD:   Yes, Your Honor.

MR. WHITTAKER:  Yes.

THE COURT:  One year county jail, $1,000 fine.  Are you aware of these charges as they have been brought against you?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  It's my understanding that you want to enter a plea. I think I've put some things on the record, but I want to do more.

A plea has been offered to you many, many times and you have turned it down on every occasion.   This morning you had the opportunity to plea before the trial.  It didn't happen.

We're now halfway through the trial, and now you want to plead. I don't want to know the substance of your conversation with your attorney, but you do believe at this point in time that it's in your best interest to enter a plea?

THE DEFENDANT:  I think so, Yes, ma'am.

THE COURT:  I'm sorry?

THE DEFENDANT:  I think so, Yes, ma'am.

THE COURT:  Okay.  Well, then I am going to make you go a little bit further.  What's the difficulty?  What's the confusion?

THE DEFENDANT:  Nothing.  It was just the witnesses they were bringing in and the way they told everything, and they ain't going to bring them in.  It's going to be my word against the officers' word.  Whose to say they are gong to believe me over the officers?

THE COURT:  Okay.  So based on the evidence that you've seen right now, you believe that the jury at least has enough information that they could convict you, is that basically what you're saying?

THE DEFENDANT:  Yeah, because there ain't no way for me to dispute what they was saying, ain't no way without the rest of the witnesses.

THE COURT: Okay. All right.  I'm holding a sentence recommendation form in my hand.  It actually applies to Cindy Swanston McCree, but it is the same form that was previously prepared for you as it related to your charges.

Have you had enough time to sit down with counsel and go over this sentence recommendation?  I understand that it doesn't contain a recommendation any more, because you are pleading straight up to the Court.  But it does have obligations in there and rights that you are waiving, and that's why I wanted you to go over it with your counsel.

Have you had enough time to go over with your counsel this form so that you understand all of the things on it?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Do you understand that we are right in the middle of a trial, there is a jury back there that's ready to continue this case, Mr. Giraud is ready to continue this case, but by entering this plea, everything will stop now as it relates to this jury trial?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  You won't be able – at one point in time, you were

contemplating actually testifying.  You understand that you won't be able to testify, you won't be able to remain silent, and you won't be able to put on evidence, and you're giving up your right to appeal.  Those are only some of the rights that are outlined on this form, do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  All right.  I don't know whether you had any possible defenses in this case because I, quite frankly, haven't gotten to your part of the case yet to hear anything.  But you've had the opportunity to talk over with your lawyer whether this is a good idea.

MR. WHITTAKER:  Yes, ma'am, we have, and I have advised him regarding my thoughts –

THE COURT:  All right.

MR. WHITTAKER:  – concerning the plea offer and the likelihood in my opinion, of success  –

THE COURT:  All right.

MR. WHITTAKER:  – as best I can.

THE COURT:  All right.  With all of this being said, is your plea today freely and voluntarily given?

THE DEFENDANT:  Yes, ma'am.

. . . .

THE COURT:  I know that you have had concerns about Mr. Whittaker in the past, but what he has done today, do you have any concerns as it relates to your counsel?

THE DEFENDANT:  No, ma'am.

. . . .

THE COURT:  You are getting ready to plead straight up to the Court. I outlined for you the maximum charge, 30 years' state prison on Count 1, 15 years' state prison on Count 2, and one year county jail on Count 3.  Count 1 with a 25 minimum mandatory.

If you do not provide substantial assistance, you are looking at a maximum of 46 years of incarceration.  With substantial assistance, I can go below the minimum mandatory, which is 25 years, I can go below that.  I can go below the 15 years.  It would be in my discretion, you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT: So folks always look at the minimum, and I'm not saying I'm going to do the maximum, but I want you to understand that's a possibility because that's what you are facing, do you understand that?

THE DEFENDANT:  Yes, ma'am.

THE COURT:  Has anybody made you any promises as to what my sentence would be or any promises at all about anything?

THE DEFENDANT:  No, not what you are going to do.

(Ex. C, pp. 99-105).  The trial court established a factual basis for the plea (that Officer Powell was conducting a buy operation when he came into contact with Cindy McCree, who, in turn, took Officer Powell to a home to buy drugs; that petitioner was at the home; that Officer Powell saw petitioner hand Oxycontin and Lortabs to Ms. McCree; that Ms. McCree, in turn, sold those drugs to Officer Powell; that when the police were brought in petitioner ran; and that petitioner was tracked by a dog and

was found under a blue tarp with the buy money next to him). (*Id.*, pp. 105-06)
Petitioner acknowledged that the evidence presented to the jury could lead them to
find him guilty. (*Id.*, pp. 106-07).

In petitioner's Rule 3.850 motion, petitioner again claimed that his plea was
involuntary because the trial court informed him that if he lost at trial, "the court was
going to give Defendant 45 years in prison." The Rule 3.850 court denied relief,
explaining:

> While the Court [at the motion to withdraw plea hearing] did not
> specifically repudiate Defendant's factual claim that the Court
> "threatened" him into entering his plea, the Court did hear his testimony
> on the subject at the hearing on the motion to withdraw plea, having
> heard his testimony on this issue, as well as others, the Court ruled,
> "Based on everything that has been submitted in the form of argument,
> the issues that have been raised, the evidence that I have heard, I just do
> not find legally sufficient reasons to withdraw the plea." In fact,
> Defendant has presented no new issues in his first claim which were not
> previously raised in his motion to withdraw plea, and apparently raised
> again on appeal. See generally Dooley v. State, 789 So. 2d 1082, 1083
> (Fla. 1st DCA 2001) (noting "that if appellant . . . previously raised the
> identical claim in his motion to withdraw, then he was required to
> challenge the ruling on that claim by direct appeal" not in a motion
> pursuant to Florida Rule of Criminal Procedure 3.850). Furthermore,
> the trial record reveals no "threats" on the part of the Court, but only a
> statement advising Defendant of the maximum penalty he faced if
> convicted. Defendant is not entitled to relief on this basis.

(Ex. I, pp. 55-56) (footnotes omitted).

The Supreme Court has held that a petitioner's sworn representations to the
trial court during his plea colloquy constitute "a formidable barrier in any subsequent
collateral proceedings. Solemn declarations in open court carry a strong presumption
of verity." *Blackledge v. Allison*, 431 U.S. 63, 73-74, 97 S. Ct. 1621, 52 L. Ed. 2d

136 (1977).  Although a defendant's attestation of voluntariness at the time of his plea is not an absolute bar to later contrary contentions, it places a heavy burden upon him. *Blackledge*, 431 U.S. at 74-75.  Petitioner must show such a strong degree of misunderstanding, duress, or misrepresentation by the court, prosecutor, or his own counsel that his plea would become a constitutionally inadequate basis for imprisonment.  *Id*.  Petitioner does not meet this heavy burden.  The state court's finding – that the trial judge did not threaten petitioner but merely advised him of his sentence exposure if he went to trial and lost – was not unreasonable.  Petitioner has not rebutted that finding with clear and convincing evidence that the trial judge threatened him or otherwise coerced him to plead guilty.  Even petitioner's own description of the trial judge's statements do not support petitioner's characterization of them as "threats", especially given that the trial judge also told petitioner that she did not care one way or the other whether he pleaded guilty or proceeded with the trial, and expressed reluctance whether to even allow petitioner to enter a plea mid-trial.  Moreover, petitioner swore under oath during the plea colloquy that his plea "was freely and voluntarily given".  (Ex. C, p. 103).  No constitutionally impermissible coercion arises when a defendant is forced to choose between the possibility of a long prison sentence if he goes to trial and the chance of a shorter sentence if he pleads guilty.  *See Brady v. United States*, 397 U.S. 742, 751, 09 S. Ct. 1463, 25 L. Ed. 2d 747 (1970); *Roberts v. United States*, 472 F.2d 1195, 96 (5th Cir. 1973) (guilty plea entered with the advice of counsel is not rendered invalid if made to avoid a harsher penalty).  The record amply supports the state courts' determination that petitioner's plea was voluntary and was not the product of threats or coercion by the trial judge.

The state court's rejection of petitioner's claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground One.

Ground Two          Whether the Defendant's Plea Was Involuntary Where Trial Counsel Represented Conflicting Interests, And Where Counsel Misadvised Defendant He Could Withdraw Plea To Remove Counsel From His Case Because Defendant Had A God-Given Right To Trial?" (Doc. 1, p. 4; Doc. 2, p. 4).

Petitioner next asserts that his plea was involuntary because his trial counsel "represented conflicting interests" in that he "performed his duties as adversary rather than advocate for the Defendant."  (Doc. 2, p. 12).  Petitioner alleges in support of this claim that counsel encouraged petitioner to take a plea offer at their first meeting without hearing petitioner's side of the story, that he and counsel had frequent conflicts, that counsel  assumed petitioner was guilty, and that counsel "failed to develop a defense for trial." (*Id.*, pp. 7-8, 12).  Petitioner asserts with regard to the latter that petitioner informed defense counsel that his co-defendant Cindy McCree told him during an inmate transport to and from the courthouse that she was coerced by law enforcement officers to give a statement implicating petitioner in the drug transaction.  (*Id.*, p. 8).  Petitioner asserts that he urged counsel to "investigate" Ms. McCree's "admission" and to call McCree as a defense witness to testify that she was coerced into implicating petitioner.  Petitioner also urged trial counsel to call as "rebuttal witnesses" two inmates (Steven Stokes and Tucker Lawson) who overheard Ms. McCree's "admission". (*Id.*, pp. 8-9).  Petitioner also faults counsel for failing to have the drug evidence (pill bottles and the plastic bag that contained them) tested for the presence of petitioner's fingerprints.  Petitioner claims that trial counsel's

inaction "left the Defendant without a key defensive weapon to challenge the State's case-in-chief." (*Id.*, p. 11). Petitioner acknowledges that the State did not introduce Ms. McCree's statement at trial or call her as a witness. (*Id.*). Petitioner nonetheless maintains that counsel should have called McCree, Stokes and Lawson as defense witnesses simply to validate petitioner's "claim that Ms. McCree was coerced by law enforcement to implicate the Defendant in the present case." (*Id.*).

The second part of petitioner's claim is that his plea was induced by a false promise from defense counsel that by pleading guilty petitioner could obtain new appointed counsel for trial. Specifically, petitioner asserts that defense counsel "informed [petitioner] to take the plea for now because [petitioner] had 30 days to withdraw the plea [and] . . . would be able to get another lawyer, and get another trial, because he 'had a God given right to a trial.'" (*Id*, p. 15).

Respondent asserts a procedural default defense, arguing that although petitioner fairly presented this claim to the trial court in his motion to withdraw plea and testified to various reasons why his plea was involuntary, petitioner failed adequately to raise his claim during his direct appeal, because appellate counsel filed an *Anders* brief and petitioner declined to file a *pro se* brief. (Doc. 19, pp. 5-6). Respondent further argues that petitioner's attempt to obtain review of his involuntary plea claim on collateral review does not constitute proper exhaustion, because the Rule 3.850 court deemed the claim procedurally barred. (*Id.*, pp. 5-8, 15-17).

Respondent's procedural default defense should be rejected. This claim is in the same procedural posture as Ground One. Petitioner exhausted the majority of his allegations (petitioner's and counsel's conflicts over trial strategy affecting counsel's representation, counsel's failure to prepare a defense, counsel's promise of new trial

counsel if petitioner pleaded guilty) by presenting them in his motion to withdraw plea and in the *Anders* brief on appeal.  *See* discussion *supra* pp. 13-14.  Petitioner exhausted his additional allegation – that counsel was ineffective because he told the prosecutor during the course of the trial that the State's case was a "slam dunk" because the State had not called McCree and Taylor as witnesses and the defense was not going to call them – in his Rule 3.850 proceeding.  The Rule 3.850 court denied relief on the new allegation on the merits.  (Ex. I, p. 56).

A.   Clearly Established Federal Law

The clearly established federal law governing challenges to the validity of guilty pleas is set forth above.  Petitioner's claim involves the additional assertion that his plea was involuntary due to counsel's failure to provide effective assistance. The following constitutes the clearly established federal law governing challenges to guilty pleas based on ineffective assistance of counsel.

In *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985), the Court held that "the two-part *Strickland v. Washington* test applies to challenges to guilty pleas based on ineffective assistance of counsel."  *Id*. at 58, 106 S.Ct. 366 (*citing Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)).   *Strickland*'s first prong requires a defendant to show "'that counsel's representation fell below an objective standard of reasonableness.'"  *Hill*, 474 U.S., at 57, 106 S. Ct. 366 (*quoting Strickland*, 466 U.S. at 688, 104 S. Ct. 2052)). *Strickland*'s second prong requires a defendant to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052.  In the context of pleas, "[t]he . . . 'prejudice' requirement . . . focuses on whether counsel's

constitutionally ineffective performance affected the outcome of the plea process." *Hill*, 474 U.S. at 59, 106 S. Ct. 366.

"Surmounting *Strickland*'s high bar is never an easy task."  *Padilla v. Kentucky*, — U.S. —, 130 S. Ct. 1473, 1485, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult."  *Richter*, 131 S. Ct. at 788.  As the *Richter* Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. (citations omitted).

B.      Federal Review of State Court Decision

The trial court at petitioner's motion to withdraw plea hearing rejected petitioner's assertions that:  (1) petitioner's conflict with defense counsel rose to the level of an adversarial relationship that prevented counsel was effectively representing petitioner's interests, (2) defense counsel provided confidential information about defense strategy to the State (petitioner's proposed questions for witnesses), (3) defense counsel failed to prepare a defense (expert testimony regarding the lack of fingerprints on the drug evidence and testimonial evidence from Ms. McCree, Mr. Taylor, Mr. Stokes and Mr. Lawson), and that counsel's lack of representation forced petitioner to enter his guilty plea, and (4) that defense counsel misadvised petitioner that petitioner could obtain new appointed counsel to represent

him at trial by pleading guilty and then withdrawing his plea.  The state trial court's findings and conclusions are set forth above.  *See* discussion *supra* pp. 17-21.

The trial court's factual findings are amply supported by the trial and plea colloquy transcript, and the record of petitioner's motion to withdraw plea hearing. Defense counsel, whom the state court found to be credible, testified that although he and petitioner had conflicts over trial strategy, they managed to discuss and resolve their conflicts and continued to communicate and maintain a good working relationship.  (Ex. D, pp. 236-39, 246-47).  Defense counsel further testified that he always had petitioner's best interest in mind and believed he conveyed that to petitioner.  (*Id*. and 249-50).  Defense counsel stated that he "never ever communicated anything to the State that my client either provided me verbally or in writing." (*Id.*, p. 234).  Any information the State gleaned about defense strategy was learned through petitioner's own testimony at the two *Nelson* hearings which occurred before trial.  (*Id.*).  As to preparing a defense, defense counsel testified that just before trial the State revealed that it had performed a fingerprint analysis on the drug evidence and that it came back negative.  (*Id.*, pp. 252-53).  Defense counsel subpoenaed the fingerprint expert and was prepared to call him to testify for the defense.  (*Id*., pp. 252-53).  Defense counsel also subpoenaed Mr. Stokes and Mr. Lawson for trial so that if Ms. McCree testified for the State, he could call them to impeach her credibility.  (*Id*., p. 253).  Counsel did not subpoena McCree or Taylor, because he believed it was not a viable defense strategy to "parade a series of witnesses [who] would, basically, testify that [petitioner] was guilty. . . ." (*Id.*, p. 228).  Defense counsel also thought it was unethical to call witnesses who "would, essentially, say that [petitioner] was guilty." (*Id*., p. 230; *see also id.* ("[I]t would

have been malpractice to call the witnesses in to testify that my client was guilty. But in some minor ways or different ways their testimony might contradict itself, but the one common thread would be that he was involved and he was guilty.")). Defense counsel believed that petitioner's own testimony denying his involvement in the transaction would be better than calling witnesses whom counsel knew would affirm petitioner's guilt. (*Id.*, pp. 253-54). Defense counsel testified that he never advised petitioner that entering a guilty plea would allow him to "bring his case back on appeal." (*Id.*, p. 244). To the contrary, counsel advised petitioner that a guilty plea would waive petitioner's right to trial and appeal. (*Id.*).

The transcript of the plea colloquy also supports the state court's findings that petitioner was satisfied with counsel's representation, and that petitioner knew his plea would waive his rights to a trial, to testify, to present evidence and to appeal. (Ex. C, pp. 102-03). Petitioner swore under oath during the plea colloquy that his plea "was freely and voluntarily given" and that he had no concerns about counsel's representation at trial or in conjunction with petitioner's decision to plead guilty, notwithstanding petitioner's past concerns about defense counsel's representation. (*Id.*, p. 103). The state court's rejection of petitioner's ineffective assistance claim arising from petitioner's alleged conflicts with counsel, counsel's trial preparation and counsel's advice concerning the plea, was reasonable.

As to petitioner's additional allegation concerning counsel's remark to the prosecutor that the prosecutor's decision not to call Ms. McCree was a "slam dunk" for the State, the Rule 3.850 court found, reasonably, that even if counsel made that remark, petitioner "has not asserted that he was aware of the comment at the time, therefore, the comment could have had no bearing on his decision to enter a plea."

(Ex. I, p. 57). The Rule 3.850 court concluded, reasonably, that petitioner failed to show deficient performance or "how the outcome of his proceedings would have been different had counsel not made such a comment." (*Id.*).

The state courts' rejection of petitioner's claim was not contrary to clearly established federal law, was not an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts. Petitioner is not entitled to federal habeas relief on Ground Two.

Ground Three       "Whether The Trial Court Erred In Denying Defendant's Motion To Withdraw His Plea Before Sentencing Where Competent Substantial Evidence Was Presented That Defendant Was Induced To Plead Guilty, And Where Withdraw[al] Of Defendant's Plea After Sentencing Is Necessary To Correct A Manifest Injustice In This Case?" (Doc. 1 p. 5; Doc. 2, p. 16).

Petitioner's final claim is that the trial court erred as a matter of state law when it denied petitioner's motion to withdraw plea, because petitioner met Rule 3.170(f)'s "good cause" requirement for withdrawing a plea prior to sentencing. (Doc. 2, pp. 16-17 (*citing* Fla. R. Crim. P. 3.170(f)). Petitioner's allegations of "good cause" are: (1) that defense counsel "misadvised the Defendant to take the plea because he had 30 days to withdraw his plea and that he could obtain new counsel and get another trial" (doc. 2, pp. 17-19); and (2) that defense counsel "failed to investigate, depose, and provide compulsory defense witnesses" (*id.*, pp. 20-28). Respondent asserts a procedural default defense, arguing that petitioner's challenge to the denial of his motion to withdraw plea should have been raised on direct appeal but was not (due to appellate counsel's filing an *Anders* brief), and petitioner's attempt to raise the claim in his Rule 3.850 proceeding was rejected as procedurally barred. (Doc. 19, pp. 7, 28-29). Respondent alternatively argues that petitioner's claim raises purely

a state law issue which does not provide a basis for federal habeas relief. (*Id*., pp. 8-9, 29-30).

Petitioner is not entitled to federal habeas relief on this claim, because even if the Court rejects respondent's procedural default defense and construes petitioner's claim as raising a federal claim – that the state trial and appellate courts' denial of relief on petitioner's challenge to his guilty plea on grounds of ineffective assistance of counsel was contrary to, or involved an unreasonable application of clearly established federal law – the state courts' rejection of petitioner's claim is consistent with clearly established federal law as discussed in Ground Two above. *See* discussion *supra* pp. 35-39. Petitioner's Ground Three does not provide a basis for federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 1603-04, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted). Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.   That the petition for writ of habeas corpus (doc. 1), challenging the conviction and sentence in *State of Florida v. Johnnie Glenn Williams, Jr.* in the Circuit Court for Escambia County, Florida, Case No. 03-5746 be DENIED, and that the clerk be directed to close the file.

2.   That a certificate of appealability be DENIED.

At Pensacola, Florida this 15th day of October, 2012.


*/s/ Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**


<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).